IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 19, 2000 Session

## IN THE MATTER OF: CHRISTOPHER CODY RAINEY
## JAMES CHRISTOPHER RAINEY v. LESLIE HEAD

**Direct Appeal from the Juvenile Court for Shelby County**
**No.  J7285; The Honorable George Blancett, Special Judge**

---

**No. W2000-00504-COA-R3-CV - Filed March 20, 2001**

---

This is a case involving termination of parental rights.  The Appellant executed a consent order terminating his parental rights to his child.  Asserting that he executed the order under influence and duress by the Appellee and her family, the Appellant then filed a Petition to Vacate Order Terminating Parental Rights.  The Juvenile Court of Shelby County dismissed the Appellant's Petition.

The Appellant appeals from the dismissal of the Petition to Vacate Order Terminating Parental Rights.  For the reasons stated herein, we affirm the trial court's decision.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Cynthia A. Wilson, for Appellant

John D. Horne, for Appellee

### OPINION

### I.  Facts and Procedural History

On April 3, 1995, Cody Christopher Rainey ("Cody") was born out of wedlock to the Appellant, James Christopher Rainey ("Mr. Rainey"), and the Appellee, Leslie Head ("Ms. Head"). Mr. Rainey and Ms. Head lived together in the home of Ms. Head's mother and step-father, Gail and Jerry Atwood ("the Atwoods") until Mr. Rainey was asked to leave in December, 1996.

Mr. Rainey filed a Petition for Custody of Cody in the Juvenile Court of Shelby County on January 24, 1997. The Court Appointed Special Advocate (CASA) conducted an investigation and recommended that custody of Cody remain with Ms. Head.[1] On May 8, 1997, the court awarded custody of Cody to Ms. Head.

On October 10, 1997, Mr. Rainey was arrested following a series of crimes. Mr. Rainey assaulted his father and took his father's car without permission. After striking a parked vehicle with his father's car, Mr. Rainey assaulted Joseph Burns. Mr. Rainey then broke into the Atwood home and assaulted Ms. Head and the Atwoods. On May 6, 1998, the Shelby County Grand Jury returned indictments against Mr. Rainey for aggravated burglary and five aggravated assaults with a handgun.

Mr. Rainey hired attorney Robert Ross ("Mr. Ross") to defend him against the criminal charges. Mr. Rainey contends that the attorney for Ms. Head and the Atwoods, James Short ("Mr. Short"), approached Mr. Ross with a deal in which Mr. Short's clients would not oppose a prosecutorial grant of diversion for Mr. Rainey if he would agree to terminate his parental rights to Cody.[2] Ms. Head contends that Mr. Ross first contacted Mr. Short with the deal and urged Mr. Short to proceed with the filing of a petition for termination of Mr. Rainey's parental rights. Mr. Rainey stated that he repeatedly refused to terminate his parental rights despite Ms. Head and the Atwoods' threats to oppose a prosecutorial grant of diversion if Mr. Rainey refused to terminate his parental rights.

Ms. Head filed a Petition for Termination of Parental Rights in the Juvenile Court of Shelby County on June 8, 1998. The court appointed a guardian ad litem to investigate the petition. The facts are contradictory as to the guardian ad litem's meeting with Mr. Rainey. Mr. Rainey contends that he told the guardian ad litem that he would not consent to the termination of his parental rights. The guardian ad litem stated that Mr. Rainey informed her that he wished to terminate his relationship with Cody and that he understood the meaning of termination and its consequences. After performing an investigation, the guardian ad litem recommended that the Petition be sustained.

On October 10, 1998, a Consent Order terminating Mr. Rainey's parental rights and signed by Mr. Rainey, Ms. Head, their respective attorneys, and approved by the guardian ad litem was entered with the court. Mr. Rainey filed a Petition to Vacate Order Terminating Parental Rights on October 8, 1999, claiming that he signed the Consent Order under influence and duress. The court dismissed the Petition on February 24, 2000. This appeal followed.

---

[1] The CASA worker also recommended that Mr. Rainey seek professional counseling, that the court address visitation, that Mr. Rainey be allowed supervised visitation, and that Mr. Rainey obtain a permanent and stable residence free of guns.

[2] A prosecutorial grant of diversion would prevent Mr. Rainey from being incarcerated. After a probationary period, Mr. Rainey's criminal record would be expunged.

## II. Standard of Review

The standard of review for a non-jury case is *de novo* upon the record. See Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's factual findings, unless the preponderance of the evidence is otherwise. See TENN. R. APP. P. RULE 13(d). For issues of law, the standard of review is *de novo*, with no presumption of correctness. See Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996).

## III. Law and Analysis

The first issue presented for our review is whether the trial court erred in exercising jurisdiction over Mr. Rainey in order to terminate his parental rights. Mr. Rainey asserts two reasons the trial court was deprived of jurisdiction to terminate his parental rights: (1) Ms. Head failed to comply with the verification requirements of section 36-1-113(d)(1) of the Tennessee Code; and (2) the trial court failed to make the proper findings under section 36-1-113(c) of the Tennessee Code in terminating his parental rights.

Mr. Rainey first asserts a lack of jurisdiction because Ms. Head failed to comply with the verification requirements of section 36-1-113(d)(1) of the Tennessee Code. Section 36-1-113(d)(1) requires that a petition to terminate parental rights "shall be verified." TENN. CODE ANN. § 36-1-113(d)(1) (Supp. 1999). Mr. Rainey claims that a jurat from a previous draft of the Petition for Termination of Parental Rights that was never filed with the trial court was then attached to a later amended draft of the Petition for Termination of Parental Rights that was actually filed with the trial court. Mr. Rainey argues that this resulted in an improper verification. We do not find that the filing of a jurat from a previous draft of the Petition resulted in a lack of verification. Accordingly, we find that the Petition for Termination of Parental Rights was verified in accordance with section 36-1-113(d)(1).

Mr. Rainey next asserts a lack of jurisdiction because the trial court failed to make the requisite findings under section 36-1-113(c) of the Tennessee Code in order to terminate his parental rights. Section 36-1-113(c) states that

> (c) Termination of parental or guardianship rights must be based upon:
> (1) A finding by the court by clear and convincing evidence that the grounds for termination or [sic] parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

TENN. CODE ANN. § 36-1-113(c) (Supp. 1999). In most termination of parental rights cases, a party brings a termination of parental rights petition against the opposition of a parent or guardian. See, e.g., In re Stanfill, 984 S.W.2d 925 (Tenn. Ct. App. 1998). Courts must then make a determination

as to whether the opposing party's parental rights should be terminated pursuant to the guidelines established in section 36-1-113(c).  See id. at 927-28.

In the case at bar, however, Mr. Rainey entered into a consent order agreeing to terminate his parental rights.  It was thus unnecessary for the trial court to make findings of fact and conclusions of law as to whether Mr. Rainey's parental rights should be terminated.  Additionally, the trial court appointed a guardian ad litem who, after performing her investigation, found that it was in Cody's best interest to allow the petition for termination of parental rights to stand.  Because it was unnecessary for the trial court to make findings of fact and conclusions of law pursuant to section 36-1-113(c), we find Mr. Rainey's argument to be meritless.

The second issue presented for our review is whether Mr. Rainey freely and voluntarily agreed to terminate his parental rights.  Mr. Rainey argues that he agreed to terminate his parental rights only under the influence and duress of Ms. Head and the Atwoods that they would oppose a prosecutorial grant of diversion if he did not terminate his parental rights to Cody.  Pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure,[3]  Mr. Rainey must present clear and convincing evidence of duress or undue influence in order to set aside the Consent Order terminating his parental rights.  See In re Bishop, 678 S.W.2d 471, 472 (Tenn. Ct. App. 1984).[4]  There is conflicting evidence that Mr. Rainey's attorney, Mr. Ross, first approached the attorney for Ms. Head and the Atwoods, Mr. Short, with the proposal in which Mr. Rainey would agree to terminate his parental rights if Ms. Head and the Atwoods would not oppose a prosecutorial grant of diversion.  There is also conflicting evidence that Mr. Rainey told the guardian ad litem that he wished to terminate his relationship with Cody and understood the meaning of termination and its consequences.  Finally, Mr. Rainey and his attorney, Mr. Ross, both signed the Consent Order agreeing to terminate Mr. Rainey's parental rights.  We have carefully reviewed the record and do not find clear and convincing evidence that undue influence or duress was asserted on Mr. Rainey to influence the Consent Order.

The final issue presented for our review is whether Mr. Rainey's Petition to Vacate was procedurally barred under section 36-3-113(q) of the Tennessee Code.  Ms. Head claims that Mr. Rainey improperly filed the Petition to Vacate instead of filing a timely appeal from the Consent Order as required by section 36-3-113(q) of the Tennessee Code, which provides:

> After the entry of the order terminating parental rights, no party
> to the proceeding, nor anyone claiming under such party, may

---

[3]Rule 60.02 states in relevant part, "On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." TENN. R. CIV. P. 60.02.

[4]In re Bishop states that clear and convincing evidence of fraud or undue influence must be presented in order to set aside an adoption order.  See In re Bishop, 678 S.W.2d at 472.  Though at issue in the case at hand is a consent order for the termination of parental rights rather than an adoption order, we find that In re Bishop is a correct statement of the law in cases of termination of parental rights as well.

later question the validity of the termination proceeding by
reason of any defect or irregularity therein, jurisdictional or
otherwise, but shall be fully bound thereby, except based upon
a timely appeal of the termination order as may be allowed by
law; and in no event, for any reason, shall a termination of
parental rights be overturned by any court or collaterally
attacked by any person or entity after one (1) year from the
date of the entry of the final order of termination. This provision
is intended as a statute of repose.

TENN. CODE ANN. § 36-1-113(q) (1999 Supp.).
Because we find Mr. Rainey's appeal meritless on other grounds, we decline to address the applicability of section 36-3-113(q) of the Tennessee Code to the case at bar.

### IV. Conclusion

For the foregoing reasons, the decision of the trial court is affirmed. Costs of this appeal are taxed against the Appellant, James Christopher Rainey, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE